Your Honors, may it please the Court, my name is Benjamin Kern, I'm here to argue on behalf of the appellant, Dish Network, L.L.C., and it looks from the timer as if the five minutes for rebuttal have already been reserved. We're here to talk about two issues today. First issue is the appellee's motion to dismiss the appeal. The second issue on the merits is the district court's failure to apply the plain and unambiguous language of the statute issue in this case, 47 U.S.C. section 227, B1A3 of the TCPA, which in the procedural posture we find ourselves requires for liability on any particular telephone call that the defendant use a prerecorded voice on that telephone call. As to the appellee's motion to dismiss, this is an appeal from a document-styled final judgment. This is not an appeal from a document-styled agreed judgment or consent judgment or from a stipulated dismissal or from a stipulated judgment. While the parties did file a joint proposed judgment entry, that document memorialized that the parties had stipulated to the dismissal of non-adjudicated claims so as to allow for the finality of the adjudicated claims. But the district court didn't sign that document, didn't enter that document. It prepared, signed, and entered its own document simply titled final judgment. Dish filed its notice of appeal on the same day the final judgment was entered. That final judgment meets the requirements of 28 U.S.C. 1291 in every way, and this court should hear this appeal. As to the merits of the case, and more particularly . . . Let me ask you, Counsel, on the final judgment that Judge O'Connor signed, it would have been better practice, it seems to me, for that judgment to . . . was this his form or are you saying this is language your two parties came up with, the final judgment? In the actual final judgment. The actual final judgment that he signed on December 11th. That is the district court's form. Never mind. Go ahead. The . . . as to the merits, the district court's failure to . . . in particular, the district court's failure to apply the plain and unambiguous language of the TCPA, and again, Section 227 B1A3, to the facts of the case. There are very few relevant facts in the posture we sit now, and they're all undisputed. One, Dish made seven telephone calls over a six-month period to Plaintiff Cellular Telephone without Plaintiff's prior express consent. Four of those calls are appealed here. Of those four calls, the parties agree. Dish did not play a pre-recorded voice or an artificial voice on those calls. Since this is a case about the language of the statute, I think it's worth taking the time to read what the language says. It shall be unlawful . . . and this, again, is 47 U.S.C. Section 227 B1A3. It shall be unlawful to make any call, other than a call made for emergency purposes or made with the prior express consent of the called party, using any automatic telephone dialing system or any artificial or pre-recorded voice, to a telephone number assigned to a telephone service. Again, Dish made, as it respects this appeal, four telephone calls, made them without Plaintiff's consent, and made them to Plaintiff's Cellular Telephone. So there . . . I'd like to ask you about the first part before you move, unless you're reserving it, but go ahead and address it now. On the automated ATDS, whatever that stands for, is your position that there's no evidence to show that this Cisco or whatever the name of the system is such a device and that sort of ends that part of the statute? It is our position that there's no admissible evidence tending to satisfy Plaintiff's burden that Dish used in the ATDS. But Dish has put evidence into the record that is admissible and was admitted, and it's the only evidence in the record. One, there are three bodies of law from which the ATDS derives its definition. One, the statute, 47 U.S.C. section 227A1A, which requires, among other things, using a random or sequential number generator. What evidence is in the record? Only the affidavit of Joey Montana, Dish's business operation manager. The site, the record site, is 1411316.126 at paragraph 7, where Mr. Montana testifies or, I'm sorry, offers sworn affidavit testimony that the Cisco dialer does not have the capacity to store or produce telephone numbers to be called using a random or sequential number generator. I thought, what kind, weren't these collection calls? Yes, Your Honor. So these were by definition, I mean, you don't, Dish doesn't randomly call people trying to collect bills from, does it? No, it does not, Your Honor. And a little bit of factual background, while it's in the briefs, I think is useful. In this case, Dish signed up a new customer. The new customer gave the telephone number, in this case, the 3475 number is the defined term we've given in the briefs, and the customer gave that number to Dish with prior express consent to call that number for purposes, account-related purposes, including collection. I would characterize the calls as payment reminder calls. You're late, please, please become not current, or please become current. But at some point, the customer stopped paying the bill, but at the same time stopped paying the cellular telephone bill. So the cellular telephone was poured to somebody else. The customer didn't give Dish any knowledge of that, or any notice of that. And so when Dish called to say, return your equipment, please become current on your bill, those calls, unfortunately, reached Plaintiff's Cellular Telephone. Dish found out about that after, well, the day that it was served with this lawsuit. But that, the law has crystallized on that point, and we don't appeal certain aspects of that point that we dealt with in the lower court. But he didn't find you liable on the sole use of the ATDS on phone number 8047, is that correct? That is correct. So that's really not before us at all. That's not an alternate ground to a firm summary judgment. Well, there's no evidence, there's no admissible evidence on Plaintiff's part that we're using ATDS, and Dish has admissible evidence that it doesn't use an ATDS. And the court didn't, the court punted, essentially, on the ATDS. The court punted, but I mean, the point is, this is not a case where we would vacate and remand for further consideration of issues. Ultimately, if the court were to decide, if the court were to decide that Dish did not use a prerecorded voice on these calls, did not use an artificial voice on these calls, Dish believes the record is clear enough that it doesn't use an ATDS. That's fine. But, you know, so, yes, Your Honor. Now as, now, as I was reading through the statute, I wanted to note that there are three ways, again, to obtain liability or to reach liability under the statute. The first is the ATDS issue, which is not a ground, or is not a holding in this case. That one could find that Dish used an artificial voice, but there's no remaining allegation that Dish used an artificial voice, and it didn't. The only thing that this court has to decide is whether Dish used a prerecorded voice on, as we call them, as we describe in the briefs, calls number two through five, the four calls that are at issue here. There's no dispute. And again, I think this is an important point, there's no dispute that no prerecorded voice played on the four calls that we have on appeal. So the question is, did Dish use a prerecorded voice on the four calls where the parties agree that the prerecorded voice did not even play, and the answer is no. It's no in an English language sense, in a statutory construction sense. Use is not a defined term in the TCPA. This court has found the term use, the common meaning of the term use under Vargas-Durham, which is addressed in the briefs, as the application of something to achieve a purpose. Here the application of a prerecorded voice to deliver a message. Certainly if a prerecorded voice isn't played, it can't be applied to deliver a message. So the court would need to find that Dish used a prerecorded voice, it would need to find, it would need to do one of three things. It would either need to read the term using completely out of statute. It would need to read the phrase with the intent of, into the statute, just prior to the term using, or it would have to do as a district court did, and import concepts into the statute, such as a prerecorded voice was present on the calls. Well, counsel, one of the things about the way the statute is written in the alternative, one is to use a certain kind of calling system. The other is to use a prerecorded voice, but the prerecorded voice isn't placing the call. The automated telephone, what's the D stand for, system is placing the call if that's the system being used. But if you look at the language of the statute, as you have already read it to us, improper to make any call using an artificial prerecorded voice. It just, it sort of throws me, that's not making a call. And trying to read, the voice isn't making the call. And trying to read what that means, it does seem to me one way to read the statute, which the plaintiff's like, is that it is prohibiting these sorts of, Judge Jones mentioned that you're carrying in your box robocalls, but whatever generic word may apply to this, is to avoid harassing phone calls to debtors and otherwise. You were saying these weren't necessarily debt collection calls, whatever. And to read that more broadly, particularly with the word that you're prohibiting the making of such calls, you've got to give that some meaning, making a call with a prerecorded voice. One way to read it is, certainly the call was being placed with a prerecorded voice as much as being made with a prerecorded voice if they would have just answered. Well, and Your Honor, I would correct only insofar as it's to make any call using a prerecorded voice. So, you have to look at it temporarily. In an ATDS concept. But you make a call using a voice, prerecorded voice. It's not the placing of the call with a prerecorded voice. There is a, you have to look at it temporarily. If there was a holding of an ATDS, at that moment, the moment, the instant that the call is made, there's a violence. And so the call is made using an ATDS. That happens the instant the call is made. But to tell if a prerecorded voice is used, you have to wait and see what happens during the call. So imagine this hypothetical. This is the liability for a tree falling in the forest and nobody hearing it. Literally. I'm not sure you want to accept that, Your Honor. Perhaps if I can, perhaps if I can. That's a friendly comment. A hypothetical, I think, would help. If I had a list in front of me and the plaintiff's number was on it, and I had a push button telephone, and I dialed the number, and, but I didn't want to, there was a list of a lot of people. So I didn't want to have to say each time what my message was. You're a valued customer. We'd like you to become current on your bill. Please make arrangements. So I take a tape recorder, an old style tape recorder, and I tape record that message. And I push stop and I push rewind. And then I dial the telephone number using an actual push button telephone. And I wait for the telephone to ring. And when the recipient picks up, say plaintiff picks up, I push play. And that pre-recorded voice is played. At that point, I have made a call to plaintiff's cellular telephone without his consent, and I've played a pre-recorded voice. That is a violation of 227B1A3. But if I do exactly the same thing, dial the telephone, wait for the telephone number to ring, and when I push play, the tape breaks. So it just garbles up. Like the old style tape recorders, you open it up, it's still stuck in the tape recorder. The district court, certainly I had the intent to use a pre-recorded voice, but that's not what the statute says. And I suppose the pre-recorded voice is present somewhere on that tape. I'm not sure exactly how the imprinting works on a tape, but it's present there. But no reading of the English language or logic could say that I have used a pre-recorded voice during that call. And the law since has become clearer. Just a few months ago, the Southern District of Ohio in the case Moran v. Dish, very similar facts. In fact, overlapping telephone time for telephone, a customer situation very much like this one, a precious few calls like this one, not a barrage of telephone spam. And the court held under what are truly exactly the same facts. In fact, even the disposition of the call was as it is in this case, where the call disposition was that there was a data error. Essentially, the tape broke. Except it's on a computer-readable medium. The tape broke. And the court said, the court read John Giovanazzi's matter of law based on the undisputed evidence that no artificial pre-recorded voice was used during the call. So there's precedent. There's certainly statutory construction. There's just not a way that, again, this is not a matter of the instant that a call is made, a violation occurs. You have to wait and see what happens in the call. And in this case, no pre-recorded voice was played, and there cannot be liability. Thank you. Thank you, Your Honor. Yes, sir. Mr. Francisco. So I assume attorneys' fees are recoverable in these kinds of suits? No, Your Honor. They are not. It's not a fee-shifting statute. Well, in that case, I'm particularly sorry that you came down here. But, I mean, it's an interesting case. May it please the Court, my name is Jenny DeFrancisco, and I represent the appellee Armando Ibarra in this appeal. Let me start by saying that this Court should affirm the district court's ruling on summary judgment. The Court relied on the statute as well as established case law to come to that decision, and we believe that that is the correct decision. There are two reasons why that's the correct decision. The first is the plain language of the statute. You went over that a little bit with Mr. Kern. And Judge Shothwick touched on this a bit, that one reading of the statute, and it's our reading of the statute, is that the calls are made, the liability is placed on the call being made, not on the use. They're placing the emphasis on the use, but really where the emphasis should be is that the call is when the call is made. And the statute does not distinguish between when an ATDS call is made or when a prerecorded voice call is made. It's simply when the call is made, that is the time that the violation occurs. And that is what established case law has said, and that's what the district court relied on in coming to his decision. So what is the meaning of the rest of the statute that speaks of use? Are you just lopping that off of the statute and saying that just the making of a call is enough? No, Your Honor, we're not lopping it off. We're saying that when the prerecorded voice is used on the call, it's when the call is made. In this case, different from some of the other cases that were cited by the appellant, they disadmitted that they use a prerecorded voice on these types of calls when they use this dialer. And that's what was used here. So it's our opinion that when the call is made, it's intended for the prerecorded voice to play, and so that at the time the call is made, that's when the violation occurs. So to take Mr. Kern's hypothetical, and his hypothetical, of course, wasn't as well automated as the system we're talking about here, but he had a separate tape recorder that broke and was never, therefore, I'll use the word implemented to avoid using the word use. But in your view, it was still used, even though it broke and never played anything or never ran the tape through the machine? Well, in this case, Your Honor, there's no evidence that the tape broke. The tape was intended to break. We're dealing with a hypothetical. We do that a lot, and lawyers never like it. But anyway, deal with his hypothetical. Was it used in his hypothetical, such as to violate the statute? I believe that it was used because it was intended to be used. And that is what I think Judge O'Connor was getting at when he relied on established case law that applied to ATDS calls but also applies to prerecorded voice calls. But obviously, doesn't the nature of use import different things when you're talking about automatic dialing on the one hand and prerecorded voice on the other? I don't think that the statute discriminates between those two uses. It's an either-or. Judge Hellerstein touched on this in the Southern District of New York in a recent case where he said that it's an alternative theory, so it's using one or the other, and if the case law applies to one, then it applies to the other. Well, but that's obviously not true in terms of what using it connotes. Because you did add the word intend to your description of what would happen in a case like that where the person doesn't even answer the phone. But if the person answered the phone, the message would play.  So you're saying that people can file suit because they get calls on their cell phones that identify, let's say, an 800 or an 877 number with which they are unfamiliar, which they do not bother to answer, and which they only identify by using the call received and dialing back, right? I mean, if he had never answered the phone, would there have been a violation? But that's not what happened here. He answered. I'm asking you, but that's the logical implication of what you're saying. It's one thing if you're getting robo-calls from the same number periodically and you refuse to answer them because you know that you don't know these people or don't deal with them, but if it's a voicemail and you never hear it for the same rate, is that a double violation? Is that a double violation, automatic dialing and pre-recorded voice? I suppose it is a double violation, but you would only be liable once under the statute. But the answer to that is that the statute is designed to protect people from these harassing calls and requiring the called party to answer every call in order to establish liability in a case such as this one, where Dish has admitted that the pre-recorded voice was used on the calls, would run contrary to the legislative history of the statute. I mean, you sought $25,000 in your complaint here, right? At the time the complaint was filed, I don't know that we knew the exact number of calls. Well, now that, why? Because you didn't know the numbers he was receiving? Because the woman didn't pay a lot of bills, so you had to, whoever the previous owner was didn't pay a lot of bills, so a lot of those calls were coming in. I don't know that that was true. I just don't know that we had a specific number until we had the phone records after a subpoena. In your brief, you don't respond to the citation of the Vargas Duran case that was cited in the Dish opening brief. I'm sorry, Your Honor. What is your answer to the Vargas Duran authority from this circuit? It was cited in the Dish brief, but you did not respond or mention it in your brief. I'm not familiar with the case off the top of my head, Your Honor. So you're from Connecticut. Where's Mr. Ybarra from? He lives in Texas, Your Honor. Do you do these suits all over the country? Are you a friend of his or what? Yes, our firm does a national practice. I'd also like briefly to respond to the motion to dismiss argument. I just wanted to point out that while the judge did enter his own final judgment, Dish did agree to a judgment where they did not reserve any right of appeal. And since I'm standing here today, I'm not sure that that matters. But that was our opinion on the motion to dismiss and whether or not this appeal should be heard. What's the best case? Do you have any cases of fixing liability on prerecorded voice under your theory, that if the voice mail does not activate, they're liable anyway? I mean, I believe your only cases were on the ATDS, right? The cases we cited in the court below were on the ATDS. There's a recent decision out of the Southern District of New York, Judge Hellerstein, in King versus Time Warner, where he discusses this issue and says that it's an alternate theory of liability. And that if they're using the prerecorded voice on the calls, those calls violate the statute. I just want to go back to the language of the TCPA. I think it's important to note that the calls are made, that the violation occurs at the time that the calls are made. And that whether the person hears the message or not, in a case such as this one, where they have admitted that the voice would play if the person answered, creates liability under the TCPA, given that it is a statute designed to keep people from being harassed by these types of calls. That if they had to answer every one in order to bring a suit, it sort of defeats the purpose of what the statute is trying to do, which is stop people from being harassed. Well, you think you didn't even know the extent of the illicit calls until you sought it in discovery? Well, we knew that there were calls, Your Honor. We had, I believe, screenshots from Mr. Ybarra showing the calls, and he had said that he had answered calls and that he had heard the prerecorded message. So we knew that there was liability, if not the exact number of calls. You read the word intend before the word use in regard to the prerecorded message. Wouldn't it be also consistent with that to read the word intend before the word to place the call? For example, what if the dialing mechanism never worked? It only dialed three or four numerals, but not the rest, so that the calls were never completed, but the intent was there to make a completed call? I believe that that's a violation, Your Honor. That would be a violation, too, even though the call was never made? Yes, because the call is intended to be made, so it may not be connected. I mean, you could make a call and get a busy signal, so the person never gets the call. But you intended to make the call, and the call was made. And that's a similar example. Your Honor's reading of the statute, I was a little surprised on how you answered Judge Smith's question, which was not all that obvious what the answer would be on the statute. It seems to me that if Dish is thinking about this and doesn't place any calls, you would say the statute is almost strong enough to reach it. That seems to be going well beyond the language. I'm not saying you'd agree with what I just said. But what we're looking at is statutory language and what to make of the inclusion of certain words in there. And your biggest hurdle is the word using and what to make of that, not when we're talking about automatic dialing, but when we're talking about recorded voices and when is that voice used. I would not read new words into here, if I'm content. But just what does using modify? And you're saying it's the act of making the call. So somebody personally dialed the number, ready to go with turning on the answering machine. When does the violation occur? When the call is made. When is the call made? In this case, when it's dialed. I'd like to touch on one more issue, which is whether the calls were made with an automatic telephone dialing system. The judge did not reach that issue, as I think opposing counsel put it. He punted. And he had said that he was not going to consider the manual. But he did not exclude the manual. He said that if we went to trial, it would be plaintiff's burden to show that that was admissible piece of evidence, which it is, given that it was produced by DISH. How could it be an automatic, an illegal automatic dialing service, when the only people they are calling are people who haven't paid their bill? Now, it's another thing if the cell phone number is moved on to another person, which DISH can't know. But how can that possibly be an automatic ATDS within the statute? The FCC just ruled on July 10th that this, or they reiterated that this statute applies to debt collection or payment reminder calls, and that even if the company is trying to reach a person that they think they're trying to reach and they're actually reaching somebody else, that that's still a violation. That's ridiculous. Just briefly, I just want to sum up by saying that I think that the judge's opinion was, Judge O'Connor's opinion was well reasoned. He relied on established case law showing that the violation happens at the time the call is made. DISH admitted that the prerecorded message would be used on these calls. And I think that this court should affirm the- If we don't affirm, if we reverse him on that question about the prerecorded voice, then what disposition do we make? We would ask that the court remand the case for trial to give the plaintiff an opportunity to make the prerecorded voice argument at trial and also to handle the ATDS issue, which the court did not reach in the case below. Well, wait a minute. What fact issue would there be on the prerecorded voice issue? Whether or not they were actually played. Whether they were what? Whether DISH intended for them to be played. Okay. And then on the ATDS issue, so you're saying the only thing that stands in the way of trial on that is that he excluded the quote manual? He didn't exclude it. He just declined to rely on it on summary judgment, and he sort of punted that issue for trial. So we would want to go to trial to give the plaintiff an opportunity to recover on those four calls. Okay. That was DISH's summary judgment motion? That was the parties cross-moved, and the judge only granted in part the prerecorded calls for the plaintiff. All right. So as to the ATDS, I'm just trying to understand the procedural posture. That was submitted on summary judgment motions also, right? By both parties. That's correct, and the judge did not grant either. But did not rule one way or the other on the summary judgment issue as to ATDS. Is that right? That's correct, yes. All right. So if then we disagree with you on the other issue and it's remanded, the district court would then still be in the summary judgment posture, would it not? It would have to grant or deny the motion or cross-motion for summary judgment as to whether there's a dispute of material fact. It wouldn't automatically go to trial. That's my question. Yes, Your Honor. The judge could still rule on the ATDS issue prior to trial, yes. All right. And is the evidentiary issue about the manual properly before us or not? We didn't appeal that issue, Your Honor, because we don't believe that the judge actually made a decision on that. He sort of said in passing that he declined to use it on summary judgment and that we would get an opportunity to get it in for trial. All right. I'm still just trying to decide and just asking you for whatever help you can give us on if it's remanded, does it go to trial, or does it go back to still in the summary judgment posture for the court to determine disputed issues of material fact? Your Honor, I believe that the district court denied the remainder of both motions. So he had set the case for trial after that, and then we settled the other part of the case, and the case was then appealed. So based on that procedural posture, I think that Judge O'Connor will set the case for trial because that's where he had, that's the path he had the case on at the time that it was appealed. What's the range of damages on these? It's $500 to $1,500 per call. Here we saw $500. For 15 calls? Yes, Your Honor, 15 calls. That's $7,500. So how did you ask for $25,000 in damages? I'm not sure that we asked for $25,000. Well, I was just reading from the docket when the complaint was filed with 625. That may be a clerical error at the time it was filed. I don't believe that the complaint asks for $25,000. It may be a clerical error on the civil cover sheet. Maybe I misread it. When you subpoenaed, and since you've got two minutes, I have one more question. When you subpoenaed information about the calls, did you subpoena calls that actually went through to the phone, or did you subpoena calls that were attempted but like a busy signal or something? Is that even possible? That's not possible, Your Honor. When we subpoena phone records, the phone company provides calls that get through, not necessarily answered, but that get through. So a call that doesn't get through wouldn't appear on phone records. All right. So even though that's a violation according to what you told Judge Smith, and it's not a remediable violation? I'm sorry. I don't understand. You said it would be a violation if the call, the ATDS, failed partway through a call, or there was a busy signal, I think, because they intended to use the ATDS. And therefore, it's a violation, but it has no remedy because you can't prove that it happened. Well, you can prove it, Your Honor, and it's the kind of thing that could have been proven here based on the calling party's records. So here, Dish had produced records showing all of their calls, regardless of if they had gone through or not. So it's still a violation. The 15 calls were a combination, I think, of the phone records and also Dish's records. That's where that number came from. All right. Okay. Thank you. Thank you. All right. Mr. Kern. Thank you, Your Honor. Just a couple of issues I want to clear up. The first is, you asked about the number of calls and the amount of the burden with respect to, or at least the implication is the amount of the burden that Plankett would have dealt with. I'm sorry, record site 1411316.215. The plaintiff testified that he received at most 10 calls, and six of those were texts. Dish doesn't send texts. So his burden was not. The plate says $500 per call but can be trebled. Is that the right measure of damage? Yes. Yes, Your Honor. As to the issue of hearsay, the court, and this is at site 1411316.373, said at this stage the court agrees that the manual is hearsay and is not considered it as evidence. I would also note that counsel has mentioned a case out of the Southern District of New York, not by name, and in various FCC proceedings, but has not filed any supplemental authority under 20AJ, and that whatever that case is shouldn't be considered outside of following those appellate rules. Let me ask you about the exchange Judge Smith was having with your opponent. In light of this footnote in Judge O'Connor's opinion saying the manual might actually be admissible at trial, it seems to me there's not been a definitive ruling on the ATDS issue. Wouldn't it be appropriate if we agree with your arguments insofar as the using of a recorded voice, that the remainder still opens and it needs to be remanded? Your Honor, I'm going to answer this in a little bit of a circular way, so I apologize ahead of time. Well, the question may have been circular, so I think I deserve it. Fair enough. If the court would decide, as it should, because to determine that the term use means what appellee means it means, the position that appellee takes, the word use would become superfluous in the statute, or you'd have to import the word intent into, or with the intention of, into the statute to make, Congress knows how to write statutes. If it wanted those words in there, if there were words it wanted omitted, it could have omitted them. If there were words it wanted in there, it could easily have, but there are lots of statutes with the word intent in there. So the court should find that Dish did not use a pre-recorded voice. There's no allegation that Dish used an artificial voice. As to the issue of the ATDS, the court did hold it an annual hearsay and excluded it. The court did not decide that Dish used an ATDS. It punted on the question, as we talked about. In Dish's view, Dish has sworn affidavits that address all of the bodies of law that define an ATDS. Those affidavits are completely uncontested on the record, because the manual was inadmissible, and we would say it doesn't teach what AFLI says it teaches. The explanation why Judge O'Connor did not even, I think, refer to those affidavits, all he was concerned about was this manual. Does he talk about the affidavits in his opinion that you just described? No, Your Honor. So he's not ruling on the issue of interpretation of the statute using that part of it, ATDS? That is correct, Your Honor. So, de novo review, you're asking us to rule on that? Only if it's in our favor, Your Honor. You're more candid than most AFLIs. This is crazy. Why do you keep a case worth, I stand corrected, maybe I just misread, I see the 7500 request. Why do you keep a case like that alive? I'm not sure that I follow the question. How can anybody keep a case like this alive? And, you know, if Judge O'Connor didn't rule on part of it, why didn't you ask him to rule on the other part or dispose of the case? Well, Your Honor, these are important legal issues. Why? Because DISH has to conduct business. It conducts business using the system. But you should be arguing full force then that summary judgment is appropriate at this level on the ATDS issue. Do you concede, does DISH concede that an automatic, that when they're making collection calls or reminder, bill reminder calls, to people who have consented to give their phone numbers out for that purpose, that those are ATDS calls? Absolutely not, Your Honor. But you didn't brief it, did you? In this case? Because the court didn't decide it. That's what I'm saying. Why? I mean, you could have, yeah, go ahead. We absolutely, we absolutely take the position that DISH does not use an ATDS. Each body of law that defines an ATDS, the statute, the regulation, the FCC promulgations, each of them has been directly addressed point by point by affidavit through a person having knowledge. That is uncontested. It's uncontested for a number of reasons. How could the, and at this stage, because DISH was not the movement as it respects the appeal, those, whatever holes that the court would find should be resolved in, factual holes, should be resolved on the ATDS issue in DISH's favor. Well, then on remand, it seems to me that rather than going to trial to resolve factual disputes, that the district court would still be in the summary judgment posture of needing to rule on the summary judgment motion or cross motions. But if I misunderstand the posture, please correct me. I'm just trying to understand it. You're correct, Your Honor. And, in fact, the only evidence in the record, and that can be in the record at the summary judgment stage, are these affidavits that meet each element. The important point. Are you saying, I'm not trying to put words in your mouth, I'm still trying to understand it, comprehend it. Are you saying that on remand, what the district court should do is enter summary judgment in your favor, or should it conduct a trial? Should enter summary judgment in DISH's favor, and the reason is that the factual situation that exists now is inalienable. The only, to challenge, because the discovery is closed, and to challenge anything in those affidavits would take some kind of evidence. Plaintiff did not take the manufacturer's deposition, the Cisco manufacturer's deposition, did not take DISH's deposition, did not take Mr. Montana's deposition. Those facts in that affidavit are the facts that are in the case, especially since, again, we don't agree that the manual teaches what appellate says it teaches, but especially since it has been ruled inadmissible as hearsay, the only facts are the facts that meet each element of the affidavit. You've answered my question, I think. Yes, absolutely. This should be granted summary judgment with respect to the ATDS issue as well, but on the issue that's before this Court, DISH did not use a period of voice, and the Court should be overturned. Okay. We have your argument, and this is the conclusion of our oral arguments for this afternoon. Thank you very much. Thank you, Your Honor.